UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| XIUHUA LIN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 4:26-CV-278-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JASON WOOSLEY, *et al.*, | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Petition for Writ of Habeas Corpus, [R. 1], filed on April 20, 2026 by Petitioner Xiuhua Lin. Therein, Petitioner alleges that Respondents—which include Jason Woosley, Warden of Grayson County Jail; Samuel Olson, Field Office Director of Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States; and the Executive Office for Immigration Review—have detained her in violation of the Immigration and Nationality Act (hereinafter, "INA") and the Fifth Amendment's Due Process Clause. [R. 1, pp. 16–19]. The Court issued an Order to Show Cause, [R. 6], on April 21, 2026, setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties submitted briefs, [R. 10 (Respondents' Response); R. 13 (Petitioner's Reply)], and filed a joint motion to forego the evidentiary hearing. [R. 9]; *see also* [R. 12]. The matter has thus been fully briefed and is ripe for review. For the reasons that follow, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

- 1 -

## I.   BACKGROUND

Petitioner is a fifty-five-year-old citizen of China who has been present in the United States since January 2020. [R. 1, ¶¶ 17, 51]; [R. 10-2, p. 2]. Prior to her detention, she was employed in Lexington, Kentucky, and "maintain[ed] a stable source of income and a fixed residence." [R. 1, ¶ 54].

On March 31, 2026, Petitioner was arrested while working in Lexington, Kentucky. [R. 1, ¶ 52]. After ICE databases revealed that Petitioner lacked appropriate immigration documents, a Warrant for Arrest was issued, which cited 8 U.S.C. § 1226, codified as Section 236 of the INA, as the statute authorizing the arrest. [R. 10-3].   Petitioner was thereafter transported to the Louisville ICE Field Office for processing. [R. 10, p. 2]. That same day, March 31, 2026, DHS initiated immigration removal proceedings against Petitioner pursuant to 8 U.S.C. § 1229a by filing a Form I-862, Notice to Appear (hereinafter, "NTA"). [R. 10-1]; *see also* [R. 1, ¶ 53]. The NTA charges Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I)[1] as being "present in the United States without being admitted or paroled" and being "an immigrant at the time of application for admission, whose visa has been issued without compliance with the provisions of Section 203 of" the INA, [R. 10-1, pp. 2, 5], and further alleges the following:

1.  You are not a citizen or national of the United States;
2.  You are a native of CHINA, PEOPLES REPUBLIC OF and a citizen of CHINA, PEOPLES REPUBLIC OF;
3.  You entered the United States at or near unknown place, or about unknown date;
4.  You were not then admitted or paroled after inspection by an Immigration Officer.
5.  You are in possession of an visa (sic) that was issued without compliance with the provisions of section 203 of the Immigration and Nationality Act.

---

[1] The NTA cites to "212(a)(6)(A)(i) of the Immigration and Nationality Act" and "212(a)(7)(i)(II) of the Immigration and Nationality Act." [R. 10-1, p. 5]. The Court will instead use U.S.C. citations throughout for uniformity.

*Id.* at 2.

By way of background, on July 8, 2025, DHS, in coordination with the United States Department of Justice, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which provides that all "applicants for admission" should be detained pursuant to 8 U.S.C. § 1225, rather than § 1226. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/6JYU-M2SY]. In a reversal of longstanding ICE policy, the change effectively subjects all persons who previously entered the United States without inspection to mandatory detention under § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they were detained at or near the United States border or other ports of entry. *See id.*

After ICE took custody of Petitioner, Petitioner requested a bond redetermination hearing in front of an Immigration Judge (hereinafter, "IJ") pursuant to 8 C.F.R. § 1236. *See* [R. 1-3]. On April 14, 2026, the IJ issued a decision denying Petitioner's request for change in her custody status, citing "[n]o jurisdiction." *Id.* As long as the requirements of 8 C.F.R. § 1003.6(c)(1) are met,[2] the IJ's bond decision is stayed until either the Board of Immigration Appeals (hereinafter, "BIA") resolves any appeal or ninety days pass, whichever occurs first. 8 C.F.R. § 1003.6(c)(4).

---

[2] Automatic stays are preserved if the DHS attorney files alongside a notice of the appeal a "certification by a senior legal official" stating that:

> (i) The official has approved the filing of the notice of appeal according to review procedures established by DHS; and

> (ii) The official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.

On April 20, 2026, Petitioner filed before this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which Petitioner alleged violations of the INA and the Fifth Amendment Due Process Clause. *See* [R. 1]. Petitioner argues that § 1225 of the INA "does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings." *Id.* ¶ 60. Petitioner therefore argues that her detention is authorized under § 1226 of the INA, not under § 1225. *See, e.g.*, *id.* Accordingly, Petitioner argues that she is entitled to a bond hearing before a neutral IJ pursuant to § 1226(a). *See, e.g.*, *id.* ¶¶ 59–62. Respondents assert that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA because Petitioner qualifies as an "applicant for admission," a category of noncitizens subject to mandatory detention pending removal proceedings. *See, e.g.*, [R. 10, pp. 1–2]. Respondents "rely on and incorporate by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of Appeals in the four §§ 1225/1226 appeals that are currently pending" with that Court. *Id.* at 3. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem*, Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). Respondents concede that the "relevant facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only "relevant legal question" is whether the Petitioner is detained under Section 1225(b)(2)(A) or Section 1226. [R. 10, p. 3].

In her prayer for relief, Petitioner seeks, among other things, a declaration that her detention is unlawful, immediate release from custody, or alternatively, "a prompt individualized bond

---

8 C.F.R. § 1006.6(c)(1).

hearing." [R. 1, p. 23].

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted). The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Because Petitioner challenges the statutory and constitutional validity of her

detention, and does not directly challenge her removal proceedings, the court finds that it has jurisdiction to consider Petitioner's claims.

### III.   ANALYSIS[3]

#### A.  Section 1225 Versus Section 1226

The relevant facts are undisputed. Concerning the legal arguments, Respondents' argument regarding the applicability of Section 1225 versus Section 1226 is nearly identical to their argument in *Martinez-Elvir v. Olson*, 807 F. Supp. 3d at 735–42, and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, this Court held that "the statutory text, context, and legislative history of Sections 1225 and 1226, considered alongside longstanding federal immigration practice, renders § 1225(b)(2)(A) inapplicable" to the petitioner's detention. *Id.* at 742. Although this Court's decision contrasted with the BIA's holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), this Court cited in support (1) the Supreme Court's decision in *Loper Bright*, 603 U.S. at 413, alongside the ambiguity of § 1225; (2) "the statutory context, scheme, and text of § 1225"; and (3) numerous other federal courts concurring with its interpretation of § 1225. *Id.* at 741–42.

Respondents' incorporated brief cites to several nonbinding district courts, and one BIA decision, to support their interpretation.[4] *See* [R. 10-4]. However, the Court is not persuaded by

---

[3] Neither party has asserted any exhaustion-related arguments, *see* [R. 10], and no applicable statute or rule mandates exhaustion. *See Martinez-Elvir v. Olson*, 807 F.Supp.3d 725, 733, 733 n.4 (W.D. Ky. 2025) (noting no awareness of statutes or regulations requiring exhaustion). However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Marintez-Elvir*, 807 F.Supp.3d at 732–35, and the Court waives the exhaustion requirement for the same reasons stated therein.

[4] None of the cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. *See Loper Bright*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.")

these decisions for the reasons previously explained in *Marintez-Elvir*, 807 F.Supp.3d at 735–42, incorporated here by reference.

Moreover, the Court's holding in *Martinez-Elvir* aligns with the Second Circuit's recent unanimous opinion in *Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), which discusses the identical Section 1225 versus Section 1226 issue raised here. There, the Second Circuit held that the

> government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in *Jennings* and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous.

*Id.* at *23.

> In sum, the plain meaning of "seeking admission" in Section 1225(b)(2)(A)— presently pursuing lawful entry into the United States—is not undermined by any of the other statutory provisions to which the government retreats to find support. Therefore, we find no basis to justify departing from the unambiguous meaning of the text, under which Petitioner is not subject to mandatory detention, because he is not "seeking admission" under Section 1225(b)(2)(A).

*Id.* at *13. Judge Cabranes, concurring, further wrote that "no one can seriously contend that Petitioner is 'seeking admission' twenty-one years after he entered the country. The words, properly defined, are clear. That ought to be the end of the matter." *Id.* at *24 (Cabranes, J. concurring).

As Judge Jennings noted in a recent decision, the Second Circuit noted that divided panels in two other circuits have agreed with the government, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026), while the Seventh Circuit has preliminarily reached the same conclusion as the Second Circuit in reviewing a stay motion, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). *See Chunjuan Lin v. Woosley*, No. 4:26-CV-280-RGJ, 2026 WL 1180452, at *2 (W.D. Ky. Apr.

30, 2026). This Court recognizes the present circuit split. However, for the reasons set forth in *Martinez-Elvir* and those in the Second Circuit's opinion, this Court agrees "with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position" (over ninety percent of district court judges). *Cunha*, 2026 WL 1146044 (citing American Immigration Council and American Immigration Lawyers Association Amici Br. at 5 n.6 (citing Kyle Cheney, *Even Trump's Own Appointees are Ruling Against ICE's Mass Detention Strategy*, POLITICO (Feb. 12, 2026) [https://tinyurl.com/yc7e5sbd])). Accordingly, the Court finds § 1226, not § 1225, applies to Petitioner's detention.[5]

## B. Due Process

As stated, Petitioner is detained under § 1226. Respondents contend that because Petitioner is properly detained under § 1225, not § 1226, she has "receiv[ed] the process Congress provided." [R.10, p. 4]; *see also id.* at 16 ("The Court should deny the petition, because Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2), and the Agency has provided all the due process to which Petitioner is entitled."). Otherwise, Respondents do not substantively address the alleged violation of due process raised by Petitioner. *See* [R. 10, pp. 3–5]. Instead, their due process argument appears to rely entirely on their argument that Petitioner is detained under § 1225. *Id.* However, because the Court has found that Petitioner's detention is guided by § 1226, the Court must now

---

[5] Respondents spend several pages of their brief arguing that the Court should not consider or give preclusive effect to *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), a class action out of the Central District of California. *See* [R. 10, pp. 6–14]. In that case, the district court entered a declaratory judgment in favor of the class (i.e., noncitizens without lawful status who entered the United States without inspection and were not apprehended upon arrival), in which the court declared that § 1226(a) is the appropriate authority governing detention of such class members, and as a result, the recent DHS policy authorizing detention under § 1225 violates the INA. *See generally Samayoa v. Smith*, -- F. Supp. 3d --, 2026 WL 483243, at *2 (W.D. Ky. Feb. 20, 2026) (discussing *Bautista*). But even without considering this decision, the Court finds that § 1226 governs Petitioner's detention, for all the reasons already stated. *See Rodriguez v. Noem*, 2026 WL 116412, at *9 n.8 (W.D. Ky. Jan 15, 2026) ("For now, the Court 'rests its decision' on the independent merits of [the petitioner's] petition without relying on *Bautista*." (citation omitted)).

determine whether her continued detention pursuant to § 1226 is in violation of her right to due process of law.

Petitioner presently remains in ICE custody, to the best of this Court's knowledge. Petitioner alleges that, and the Court must determine whether, her continued detention violates her Fifth Amendment right to due process. The Fifth Amendment's Due Process Clause extends to all persons, including non-citizens, regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G. et al.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation and quotations omitted)). In determining whether a civil detention violates a detainee's due process rights, the *Mathews v. Eldridge* three-part balancing test applies. 424 U.S. 319 (1976). Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Respondents argue that because Petitioner has received "notice of the relevant charges of removability and a hearing before an immigration judge," she has not been denied due process. [R. 10, p. 4]. The Court will consider Respondent's argument in light of the three *Mathews* factors.

1. Private Interest

Respondents do not dispute Petitioner's significant private interest in not being detained. *See* [R. 10, pp. 3–5]. "[T]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004). In fact, "[f]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In assessing the liberty interest at stake, courts can consider the detainee's condition of confinement in order to determine if those conditions are indistinguishable from criminal incarceration. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025).

Here, Petitioner is being held at the Grayson County Detention Center, where she is separated from her home and her community. *See generally* [R. 1, ¶ 54]. The fact that Petitioner has received notice of the relevant charges of removability and was able request a bond redetermination before an IJ does not diminish Petitioner's current interest—being free from allegedly unlawful detention. Therefore, the Court finds that the first *Mathews* factor strongly favors Petitioner. *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025); *Singh v. Lewis*, No. 4:25-CV-96-RGJ, 2025 WL 2699219, at *4 (W.D. Ky. Sep. 22, 2025); *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *5 (W.D. Ky. Oct. 3, 2025).

2. Risk of Erroneous Deprivation

The second *Mathews* factor addresses the risk of erroneous deprivation of Petitioner's liberty interest due to Petitioner's continued detention without any determination as to her flight risk or danger to the community. *See* 424 U.S. at 335. The Court here finds that this factor also weighs in Petitioner's favor; because Petitioner has been denied a bond hearing before a neutral IJ, there is no evidence in the record that Petitioner is a flight risk or a danger to the community. *See Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 495 (S.D.N.Y. 2025). Therefore, the risk of erroneously depriving Petitioner of physical freedom is impermissibly high. *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 786 (E.D. Mich. 2025) ("[T]he risk of erroneously depriving [the

petitioner] of his freedom is high if the IJ fails to assess his risk of flight and dangerousness.").

Without the bond hearing before a neutral IJ that she is entitled to under § 1226(a), Petitioner will

never be able to present the compelling reasons that she is neither a flight risk nor a danger.

### 3. Respondents' Interest

The third and final *Mathews* factor pertains to Respondents' interest in the procedure at

issue, as well as the financial or administrative burdens associated with alternative procedures.

*Mathews*, 424 U.S. at 335. The Court nevertheless recognizes the Respondents' strong interest in

ensuring that noncitizens—criminal or otherwise—do not harm citizens or the community and that

they appear for future immigration proceedings. These interests manifest in the IJ's bond

determination where the IJ assesses a noncitizen's danger to the community and flight risk. *See*

*Sampiao*, 2025 WL 2607924, at *12 ("The government does, indeed, have a legitimate interest in

ensuring noncitizens' appearance at removal proceedings and preventing harms to the

community."). A "routine bond hearing" before an IJ, however, imposes a "minimal" burden on

Respondents, as these procedures are already well-established. *Hyppolite v. Noem*, 2025 WL

2829511, at *15 (E.D. N.Y. Oct. 6, 2025). Therefore, "existing statutory and regulatory safeguards

adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025

WL 1459154, at *10 (D. Minn. May 21, 2025). Accordingly, the Court finds the third *Matthews*

factor also favors Petitioner.

As a whole, then, all three *Mathews* factors weigh in favor of Petitioner. The Court agrees

with Petitioner that her detention under § 1225's mandatory detention framework violates her due

process rights.

## IV.    CONCLUSION

For the above-stated reasons, the Court will grant Petitioner's Petition and order that Respondents either release her or imminently provide a bond hearing before a neutral IJ.[6] Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    Petitioner's Petition for Writ of Habeas Corpus, [**R. 1**], is **GRANTED**.

2.    Respondents **SHALL** immediately release Petitioner or, in the alternative, provide her with a bond hearing before a neutral IJ under 8 U.S.C. § 1226(a) **within seven (7) days** of the date of this Order.

3.    Respondents are **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

4.    Respondents **SHALL** file a Status Report with this Court on or before **May 20, 2026** to certify compliance with this Order. The Status Report **SHALL** include: (1) if and when Petitioner's bond hearing occurred; (2) if bond was granted or denied; and (3) if denied, the reasons for the denial.

This the 11th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[6] Respondents argue that, even if the § 1226 governs Petitioner's detention, that provision "does not provide for immediate release." [R. 10, pp. 14–15]. Instead, Respondents argue, "[i]t provides for detention until a bond proceeding is adjudicated." *Id.* at 15. The Court's order allows Respondents to provide just such a bond hearing, so the Court finds this argument to be moot.